UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 96 CR 553 |
| | ) | 02 C 6988, 02 C 4784, 02 C 7077, |
| | ) | 02 C 7076, 02 C 2074 |
| | ) | |
| JIMMIE GHOLSON, COMPTON JONES, | ) | Judge Rebecca R. Pallmeyer |
| ROLAND TETTEH, BRYAN CRENSHAW, | ) | |
| NAZARETH WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 21, 1998, Petitioners Jimmie Gholson, Compton Jones, Roland Tetteh, Bryan Crenshaw, and Nazareth Wilson were convicted in federal court, following a six week jury trial, for their involvement in a drug distribution conspiracy operated by the Gangster Disciples street gang in Chicago. Following their convictions, Judge Marovich sentenced Gholson to a term of life imprisonment, Jones to a 420-month term of imprisonment, Tetteh to a 292-month term of imprisonment, Crenshaw to a term of life imprisonment, and Wilson to a term of 235 months in prison. The Seventh Circuit upheld their convictions and sentences on direct appeal. *United States v. Wilson*, 237 F.3d 827 (7th Cir.), *cert. denied*, 534 U.S. 840 (2001). Petitioners subsequently filed separate *pro se* petitions for habeas relief pursuant to 28 U.S.C. § 2255 (Wilson filed on March 20, 2002, Jones on June 3, 2002, Gholson on September 20, 2002, Crenshaw on October 1, 2002, and Tetteh on October 2, 2002). *United States v. Gholson*, No. 02-C-6988, 2003 WL 21466954 (N.D. Ill., June 25, 2003). This court previously consolidated three of these petitions (Gholson, Jones, and Tetteh) and issued an opinion on the merits of several of the claims on June 26, 2003. In its opinion, the court reserved judgment on a number of issues pending further response from the government. The court now considers these issues along with the petitions of Crenshaw and Wilson, which raise similar legal issues.

## BACKGROUND

As discussed in the court's previous opinion, Petitioners were indicted in May 1997 for crimes relating to their involvement in a drug conspiracy organized and operated by the Gangster Disciples.[1] The Gangster Disciples are a Chicago street gang that operated a highly organized drug operation primarily involving the sale of "crack" and powder cocaine. During the early 1990s, the gang had 6,000 members and annual revenues totaling approximately $100 million. Petitioners Gholson, Jones, Tetteh, and Crenshaw were tried together in federal court on these charges, along with a sixth co-defendant, Jeffery Hatcher. Prior to trial, Wilson pleaded guilty to participation in the drug conspiracy in violation of 21 U.S.C. § 846 and was sentenced to 235 months of imprisonment. *Wilson*, 237 F.3d at 830. The five-week trial ended on August 21, 1998, and resulted in guilty verdicts against each of the remaining Petitioners on a variety of drug offenses. Specifically, the jury found Gholson guilty of engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848, conspiracy to distribute drugs in violation of 21 U.S.C. § 846, and use of a minor in a drug distribution operation in violation of 21 U.S.C. §§ 861(a)(1) and (2). *Wilson*, 237 F.3d at 830. He was sentenced to a term of life imprisonment on the CCE charge, followed by a 10-year term of supervised release. *Id.* The jury found Jones guilty of conspiracy to distribute a controlled substance under 21 U.S.C. § 846, possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), and two counts involving the use of a minor in drug sales, under 21 U.S.C. §§ 861(a)(1) and (2). *Id.* Judge George Marovich sentenced Jones to 420 months imprisonment, followed by 10 years of supervised release. *Id.* Tetteh was convicted of a conspiracy charge under section 846 and on two counts related to the use of minors in

---

[1]    The Seventh Circuit has discussed in detail the Gangster Disciple conspiracy and the background facts of this case. For a more complete discussion of the factual background, *see United States v. Wilson*, 237 F.3d 827 (7th Cir. 2001), *United States v. Smith*, 223 F.3d 554 (7th Cir. 2000) (discussing the history of the Gangster Disciples' drug distribution business), and *United States v. Jackson*, 207 F.3d 910 (7th Cir. 2000), *vacated by* 531 U.S. 953 (2000) (discussing the government's prosecution of members of the Gangster Disciples).

2

connection with a drug conspiracy, under §§ 861(a)(1) and (2). *Id.* The court sentenced him to 292 months of imprisonment, followed by 5 years of supervised release. *Id.* The jury found Crenshaw guilty of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, possession of a firearm in violation of 18 U.S.C. § 922(g), possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and use of a communication facility in the commission of a narcotics conspiracy in violation of 21 U.S.C. § 843(b). *Id.* The judge sentenced Crenshaw to a term of life imprisonment on the CCE charge, followed by supervised release for 10 years. *Id.*

Following their convictions and sentencing, each Petitioner filed a separate appeal raising a number of issues. The Seventh Circuit consolidated the various appeals and rejected each of them. *Wilson*, 237 F.3d at 830. Petitioners then filed separate *pro se* habeas petitions under 28 U.S.C. § 2255. This court has previously consolidated and addressed the petitions of Gholson, Jones, and Tetteh. *Wilson*, 2003 WL 21466954. Although the court denied a number of Petitioners' claims, it reserved judgment on some of the claims pending further response from the government. Specifically, the court denied: (1) Gholson's *Apprendi* claim relating to his sentence under 21 U.S.C. § 848(b); (2) Jones and Tetteh's claims that their convictions under both 21 U.S.C. § 846 as well as §§ 861(a)(1) and (2) violated double jeopardy; (3) Jones claim that the trial court's consideration of his prior convictions during sentencing violated 21 U.S.C. § 851(a); (4) Gholson's claim that his conviction under 21 U.S.C. § 848 was improper in light of the court's failure to instruct the jury that they must agree on the specific predicate acts underlying the continuing criminal enterprise charge; (5) Gholson's claim relating to the court's calculation of the quantity of drugs involved during sentencing; (6) Jones and Tetteh's ineffective assistance of counsel claims pertaining to their trial attorney's failure to raise the *Apprendi* issue; (7) Gholson's motion under 18 U.S.C. § 3582 for a sentence reduction; and (8) Gholson's motion under Federal Rule of Criminal Procedure 12(b)(2) attacking the sufficiency of his indictment. *Gholson*, 2003 WL 21466954, at *16. Finally, the court granted in part and denied in part Gholson's motion to reduce the special

3

assessment imposed on him under 18 U.S.C. § 3572(c). *Id.* at **22-24.

As noted, the court reserved judgment as to a handful of remaining claims pending further government response. Specifically, the court reserved judgment as to: (1) Jones and Tetteh's *Apprendi* claims; (2) the double jeopardy claim raised by Jones and Tetteh relating to section 861(a)(1) and (2); (3) Gholson's Fourth Amendment claim; (4) the ineffective assistance of appellate counsel claims raised by all three Petitioners; and (5) Gholson's ineffective assistance of trial counsel claim. In addition to these claims, the separate § 2255 petitions of their original co-defendants Bryan Crenshaw and Nazareth Wilson are before this court.

In his petition, Crenshaw claims that his trial counsel was ineffective and that the trial judge violated his Sixth Amendment right by refusing his pre-trial requests for appointment of a new attorney. Crenshaw also argues that the court erred in failing to instruct the jury that they must unanimously agree on the predicate acts supporting the continuing criminal enterprise (CCE) charge. Similarly, he argues that the jury should have been instructed that certain incidents involving persons who were cooperating with the government at the time of the offense could not qualify as predicate acts for the CCE charge. In addition, Crenshaw claims that the government failed to show that he was responsible for the use of a minor in connection with drug trafficking under §§ 861(a)(1) and (2). In a supplemental petition filed on July 26, 2004, Crenshaw argues that the court's imposition of a life sentence under the CCE statute violated his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004).

Wilson also raises ineffective assistance claims: Specifically, he argues that both his trial and appellate counsel were ineffective for failing to: (1) raise *Apprendi* issues relating to his sentencing; (2) present his claim that several of his prior convictions were improperly assigned criminal history points; and (3) argue against the two-level enhancement of his offense level under § 2D1.1(b)(1) of the United States Sentencing Guidelines.

Since the court's first opinion on this matter, Petitioner Gholson has filed a number of

4

supplemental petitions alleging, *inter alia*, that: (1) the court's imposition of a life sentence pursuant to the CCE statute violated *Blakely*; (2) outside "intrusion" into the province of the jury had a prejudicial impact on his trial; (3) the United States Attorney engaged in prosecutorial misconduct during his trial. Petitioner Tetteh has also filed a supplemental petition raising the *Blakely* issue. Because the government has not argued that these supplemental petitions constitute abuse of the writ, the court will consider these additional claims along with those brought by Petitioners Crenshaw and Wilson and those previously reserved by the court.

## DISCUSSION

Section 2255 permits a prisoner to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255. Such collateral relief is only available, however, where there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). Where the court finds that there has been such a "fundamental defect" resulting in a "complete miscarriage of justice," *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)), the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

Before a district court will review a claim on its merits, the issue must have "been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). A section 2255 motion is not a substitute for a direct appeal, and thus the "failure to raise constitutional issues to a conviction on direct appeal bars a petitioner from raising the same issue in a section 2255 proceeding -- absent a showing of good cause for and prejudice from the failure to appeal." *Id.* (citing *Norris v. United States*, 687 F.2d 899 (7th Cir. 1982)). Thus, as this court

5

noted in its previous opinion, a section 2255 motion cannot raise: "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; . . . and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Gholson*, 2003 WL 21466954, at *4 (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds*, *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994)).

Crenshaw and Wilson raise a number of issues in pursuit of relief under section 2255. Several of these arguments are similar to, if not the same as, those raised by Petitioners Gholson, Jones, and Tetteh in their supplemental petitions or upon which the court has reserved judgment. Although Petitioners raise a number of issues that often overlap one another, the court recognizes five main issues: (1) double jeopardy claims; (2) *Apprendi* issues; (3) claims arising out of the Supreme Court's recent *Blakely* decision; (4) Fourth Amendment claims; and (5) ineffective assistance of counsel claims. To the extent possible, the court will address those issues common to one or more Petitioners before addressing those claims unique to a particular Petitioner. The court will liberally construe the *pro se* petitioners under *Haines v. Kerner*, 404 U.S. 519, 520 (1972); Petitioners nevertheless still bear the burden of demonstrating their entitlement to habeas relief.

I. **Double Jeopardy**

Petitioners Jones and Tetteh argue that they were punished twice for the same conduct in violation of the Fifth Amendment's double jeopardy clause. Specifically, they argue that 21 U.S.C. § 861(a)(1) is a lesser included offense of § 861(a)(2) and that they cannot be punished under both statutes. The Supreme Court has stated that "multiple punishments cannot be imposed for two offenses arising out of the same criminal transaction unless each offense 'requires proof of a fact which the other does not.'" *Whalen v. United States*, 445 U.S. 684, 691 (1980) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "Where proof of one offense necessarily

6

entails proof that another offense occurred, rendering the latter a lesser included offense of the former, the two offenses are deemed to be the 'same' for purposes of *Blockburger.*" *United States v. Hatchett*, 245 F.3d 625, 632 (7th Cir. 2001) (citing *Rutledge v. United States*, 517 U.S. 292, 297 (1996); *Brown v. Ohio*, 432 U.S. 161, 168-69 (1977)). The court considered this issue in its previous opinion, noting that although Petitioners failed to cite any case law holding that § 861(a)(2) is a lesser included offense of § 861(a)(1), "it might well be possible to interpret the statute this way . . . ." *Gholson*, 2003 WL 21466954, at *10. For this reason, the court reserved judgment on the issue and directed the government address the issue in a supplemental response.[2]

In its supplemental response, the government argues that the two offenses are both factually and legally distinct. The government contends that Petitioners Jones and Tetteh were convicted under § 861(a)(1), for using minors to actually sell drugs as a part of the Gangster Disciple conspiracy. Section 861(a)(1) declares it unlawful to "knowingly and intentionally . . . employ, hire, use, persuade, induce, entice, or coerce a person under eighteen years of age to violate any provision of this subchapter or subchapter II of this chapter,"[3] 21 U.S.C. § 861(a)(1). In support of Jones and Tetteh's convictions under this provision, the government cites the testimony of Derrick Wiltz and Robert Ford, who both testified that they sold drugs for the Gangster Disciples as juvenile members of the gang. (Government's Response to the Court's Order of June 25, 2003, hereinafter Gov't Res., at 7 (citing Trial Transcript, hereinafter T.T., at 1730, 1834).) Section 861(a)(2) makes it unlawful to use a minor "to assist in avoiding detection or apprehension" for any drug offense. 21 U.S.C. § 861(a)(2). Jones and Tetteh were properly convicted under that

---

[2]    The government has not argued that the double jeopardy issue has been defaulted, although the issue does not appear in the Seventh Circuit's opinion on direct appeal. *See Wilson*, 237 F.3d 827.

[3]    The Chapter is that dealing with drug abuse prevention and control. 21 U.S.C. §§ 801-971 (2003).

statute, as well, the government urges, because they used minors as gun-toting gang security guards. The government cites testimony of gang members who describe the intentional use of "shorties," i.e. juvenile gang members, to provide security because shorties "could go to jail and get out with the gun easier" than older members of the gang, who often had extensive criminal histories. (Gov't Res., at 7-8 (citing T.T. at 235-36).)

Under the *Blockburger* test, double jeopardy is implicated only when punishment is imposed for multiple "offenses arising out of the same criminal transaction." *Whalen*, 445 U.S. at 691 (*citing Blockburger*, 284 U.S. at 304). Here, the events leading to the convictions under §§ 861(a)(1) and (2) did not arise out of the same transaction. Rather, as discussed above, the charges and convictions under each statute were rooted in different factual circumstances. Before submitting the case to the jury, Judge Marovich took pains to point out the distinction between the two juvenile charges during his instructions, noting that "they are different in one regard": namely the focus on using a minor to further the conspiracy under § 861(a)(1) versus the use of juveniles to "avoid detection and apprehension for violation of the narcotics law." (T.T. at 2760-61.) Apprising the jurors of these different elements, the judge remarked, "That's the distinction between the two counts." (*Id.* at 2761.) The law presumes that jurors understand and follow the instructions given to them. *United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998) ("the law assumes that they [jurors] can and do follow the limiting instructions issued to them."); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.").

The government indicted Petitioners under both §§ 861(a)(1) and (2) and presented evidence of separate violations of both statutes. After the judge instructed them as to the distinctions between the two statutes, the jury returned guilty verdicts on both charges, against all defendants. The court will presume that the jury followed the instructions, and convicted Petitioners

under §§ 861(a)(1) and (2) for the separate incidents discussed above. Petitioners' double jeopardy claims are dismissed.

## II.    *Apprendi* Claims

After having pleaded guilty to a charge of conspiring to distribute crack cocaine, powder cocaine, heroin, and marijuana, Petitioner Wilson now argues that his constitutional right to due process was violated when he was sentenced under the Sentencing Guidelines as though the conspiracy definitely involved powder and crack cocaine. In addition, this court has previously reserved judgment on similar claims of Petitioners Jones and Tetteh. Both Jones and Tetteh were charged with conspiracy to distribute marijuana, crack cocaine, powder cocaine, and heroin, a charge for which the jury returned a general verdict of guilty. Absent a specific finding by the jury, they argue that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), required the judge to sentence them according to the drug type and quantity that yields the most lenient maximum sentence consistent with this verdict, in this case less than 50 kilograms of marijuana.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. As the court discussed in its prior opinion, Petitioners have cited cases from the Second and Sixth Circuits discussing the applicability of *Apprendi* in the current situation and requiring courts to assess the most lenient statutory sentence where a jury returns only a general verdict. *See United States v. Dale*, 178 F.3d 429, 431-32 (6th Cir. 1999) (holding that where a jury returns a general verdict on a conspiracy charge involving marijuana and crack, the court must sentence the defendant "as if he distributed only the drug carrying the lower penalty"); *United States v. Barnes*, 158 F.3d 662, 667-68 (2d Cir. 1998) (agreeing with several other Courts of Appeals that "when the jury returns a general verdict to a charge that a conspiratorial agreement covered multiple drugs, the defendant

9

must be sentenced as if the organization distributed only the drug carrying the lower penalty."). Since *Apprendi*, the Seventh Circuit has held that "all facts (other than prior convictions) that set the maximum possible punishment . . . must be established beyond a reasonable doubt to the same body that determines culpability . . ." *United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001).

Jones and Tetteh raised the *Apprendi* issue for the first time in their § 2255 petitions, and Wilson likewise failed to raise the issue on direct appeal. Rather than raising *Apprendi* on direct appeal, Petitioners instead unsuccessfully challenged the trial court's conclusion that the substance being bought and sold was crack cocaine. *Wilson*, 237 F.3d at 831. As discussed in the court's previous opinion, in order to raise a constitutional issue for the first time in a § 2255 petition, a petitioner must demonstrate cause for the failure to raise the claim on direct appeal and demonstrate that he was prejudiced by the failure. *Gholson*, 2003 WL 21466954, at *6; *see also Melvin v. United States*, 78 F.3d 327, 329 (7th Cir. 1996) (citing *Barker v. United States*, 7 F.3d 629, 631 (7th Cir. 1993)).

In Petitioners' case, the sole "cause" cited for the failure to raise this issue earlier is the ineffective assistance of appellate counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 2000) (ineffective assistance can serve as a cause for purposes of procedural default). Under the two-pronged *Strickland* test, a party asserting ineffective assistance of counsel must demonstrate both: (1) that counsel's performance was deficient; and (2) that the deficiency performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668 (1984). The deficiency prong requires a defendant to demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. During this inquiry, however, a court "must be highly deferential," indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. The prejudice prong of *Strickland* requires a showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. With these standards in mind, the court addresses, first, Jones and Tetteh's *Apprendi* argument and then turns to Wilson's claim, which differs slightly due to the fact that his conviction arose out of a guilty plea.

### A. Jones and Tetteh

For purposes of their current petitions, the court has assumed that the performance of Jones and Tetteh's appellate counsel was deficient under *Strickland* for failing to raise the *Apprendi* issue on direct appeal. *Gholson*, 2003 WL 21466954, at *6. The Supreme Court decided and issued *Apprendi* three months prior to the date of Petitioner's oral argument. Given this length of time, the prominence of the decision, and its clear applicability to their case, the court will assume that appellate counsel's failure to address the issue was objectively unreasonable. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996) ("Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun . . . But when appellate counsel omits (without legitimate strategic purpose) 'a significant and obvious issue,' we will deem his performance deficient . . . .") (internal citations omitted).

The more difficult question is whether Petitioners were prejudiced by the deficiency. The government argues that *Apprendi* is not applicable in this case, and that Petitioners were thus not prejudiced by their appellate counsel's failure to raise the issue, because neither Jones nor Tetteh received a sentence in excess of the default statutory maximum applicable to their convictions. After being convicted on one conspiracy charge, § 846, two counts relating to the use of a minor in drug operations, §§ 861(a)(1) and (2), and one count of possession with intent to distribute a controlled substance, § 841(a)(1), Jones faced a possible maximum sentence of 120 years in prison. Section 841 authorizes a maximum sentence of twenty years for the distribution of any detectable quantity of any Schedule I or II controlled substance (including heroin, cocaine, and marijuana), even where the jury does not find a particular quantity. 21 U.S.C. § 841(b)(1)(C); *see also, e.g., United States v. Brough*, 243 F.3d 1078, 1079-80 (7th Cir. 2001). In addition, his

conspiracy conviction relating to this drug distribution exposed him to an additional twenty years. 21 U.S.C. § 846. The default statutory penalty under §§ 861(a)(1) and (2) is "twice the maximum punishment otherwise authorized" for the underlying narcotics violation, in this case forty years. 21 U.S.C. § 861(b). An additional conviction under § 861(a)(2), if upheld, would expose Jones to the possibility of an additional forty years of imprisonment. *Id.*

Tetteh similarly faced a maximum of twenty years in prison under § 846 for the distribution of any detectable amount of a Schedule I or II drug (including heroin, cocaine, and marijuana). 21 U.S.C. §§ 841(b)(1)(C); 846. In addition, his convictions under §§ 861(a)(1) and (2) rendered him subject him to the same forty-year maximum sentences for involving a minor in a drug operation. 21 U.S.C. § 861(b). Thus, Tetteh faces a possible default statutory maximum penalty of 100 years of imprisonment.

Neither Jones nor Tetteh received the maximum statutory penalties of 120 or 100 years, respectively. Jones was sentenced to 420 months of imprisonment, followed by ten years of supervised release, while Tetteh received 292 months of imprisonment and a five-year period of supervised release. *Wilson*, 237 F.3d at 830. Since the jury's general verdict did not specify the drug types or quantities involved in their convictions, Petitioners argue that the court is required to assume that they distributed the drug that "carries the most lenient statutorily prescribed sentence." *Barnes*, 158 F.3d at 668; *see also United States v. Orozco-Prada*, 732 F.2d 1076, 1083-84 (2d Cir. 1984) (court may not sentence defendant under statutory penalties for cocaine conspiracy when jury may have found only marijuana conspiracy). Yet, even if the court accepts Petitioners' argument that they were only subject to five-year maximum sentences under 21 U.S.C. § 841(b)(1)(D), which applies in lieu of the twenty-year maximum sentenced under § 841(b)(1)(A) for the distribution of "less than 50 kilograms of marihuana," their possible default statutory maximums would still exceed their actual sentences. Even if the jury had convicted Petitioners for conspiracy to distribute less than 50 kilograms of marijuana, Jones would have faced a maximum

sentences of 480 months (5 years under both §§ 846 and 841(b)(1)(D),10 years under both §§ 861(a)(1) and (2)) and Tetteh would have been eligible for a 300 month sentence (5 years under § 846 and 10 years for both §§ 861(a)(1) and (2)).

In order to establish these default statutory maximums, the government argues that it was required only to establish that the drug distribution conspiracy involved "a detectable quantity of any Schedule I or II controlled substance." *Brough*, 243 F.3d at 1080. Although the jury returned a general verdict which did not specify the quantity of each type of drug involved in the conspiracy, each of the four drug types which Petitioners were charged with distributing and conspiring to distribute is a Schedule I or II drug (heroin, crack, powder cocaine, and marijuana). As a result, the jury necessarily found Petitioners guilty of conspiring to distribute, and in the case of Jones, of distributing, a Schedule I or II controlled substance, subjecting them to, at the very least, the above 480- and 300-month default statutory maximum penalties even if the conspiracy involved less than 50 kilograms of marijuana. After the jury verdict established these maximum penalties, *Apprendi* no longer applied. "Once the maximum penalty has been established in a constitutional manner, the judge selects the punishment using the preponderance standard." *Brough*, 243 F.3d at 1079 (citing *Edwards v. United States*, 523 U.S. 511, 514-15 (1998)); *see also United States v. Hernandez*, 330 F.3d 964, 980 (7th Cir. 2003) ("The *Apprendi* decision makes clear that its application does not extend to situations where a defendant's sentence does not exceed a prescribed statutory maximum."), *cert. denied*, ___ U.S. ___, 124 S.Ct. 1599 (2004); *Apprendi*, 530 U.S. at 481 ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion–taking into consideration various factors relating both to offense and offender–in imposing a judgment *within the range* prescribed by statute."). Thus, Petitioners' argument that *Apprendi* either (1) required the jury to make a finding beyond a reasonable doubt as to the type of drug involved in the conspiracy or (2) required the court to sentence defendants as if they had distributed only the drug carrying the lower penalty is of no avail.

### B. Wilson

As an initial matter, the court is not convinced that the failure of Wilson's appellate counsel to raise *Apprendi* was unreasonable and constitutionally deficient under *Strickland*. Unlike Jones and Tetteh, for whom the jury returned a general verdict of guilty on the conspiracy charge, Wilson pleaded guilty to the conspiracy charge. Thus, *Apprendi* would not be implicated because the conclusion that the conspiracy involved all four controlled substances (crack, cocaine, heroin and marijuana) was not improperly determined by the judge on a preponderance standard, but rather by Wilson's own admissions in the plea agreement and colloquy. In the signed plea agreement, Wilson admitted that as a member of the Gangster Disciples he "conspired and agreed with other members of the Gangster Disciples, to sell powder *and* crack cocaine, heroin *and* marijuana to individuals in areas on the south side of Chicago. Often times, the defendant distributed wholesale quantities of power *and* crack cocaine to other Gangster Disciples, knowing that these drugs would ultimately be sold by members of the gang to drug users at 'drug spots' in territories controlled by the Gangster Disciples." (R. 397 (emphasis added).) Although the plea agreement states the government and Wilson disagreed "as to the quantity of narcotics involved in the offense," it does not indicate that there was any disagreement over the types of narcotics involved. (Plea Agreement, at 3.); *cf. United States v. Bush*, 70 F.3d 557 (10th Cir. 1995) (defendant's guilty plea to indictment for conspiracy to distribute cocaine *and/or* cocaine base created ambiguity as to which drug was involved). Notably, Wilson did not dispute that the conspiracy involved the distribution of all four drugs - cocaine base (crack), cocaine, heroin, and marijuana. Nor does Wilson suggest that his guilty plea was involuntary or untruthful. Prior to his plea, Wilson was placed under oath and found fully competent to enter a guilty plea. (Plea Transcripts, at 4-6, 18.)

Wilson was fully advised as to what exactly he was pleading guilty to, as well as the possible consequences. Prior to entering his plea, the government advised Wilson that the charge to which he was pleading guilty carried with it a mandatory minimum term of imprisonment of ten

years, followed by a minimum of five years of supervised release. (Plea Transcript, at 12.) This mandatory minimum sentence corresponds to, among other things, the distribution of 1 kilogram or more of heroin, 5 kilograms of cocaine, 50 grams or more of crack, or 1000 kilograms or more of marijuana. 21 U.S.C. § 841(b)(1)(A). When Judge Marovich asked Petitioner Wilson if he understood that this mandatory minimum sentence would be imposed, he responded in the affirmative. (Plea Transcript, at 12.)

Even if one disregards the mandatory minimum, having admitted to conspiring to distribute and distributing any detectable amount heroin, marijuana, crack and powder cocaine, Wilson faced a default statutory maximum sentence of 40 years of imprisonment. Section 841 authorizes a maximum sentence of twenty years for the distribution of any detectable quantity of any Schedule I or II controlled substance (including heroin, cocaine, and marijuana), even where the jury does not find a particular quantity. 21 U.S.C. § 841(b)(1)(C); *see also, e.g., United States v. Brough*, 243 F.3d 1078, 1079-80 (7th Cir. 2001) (20-year maximum authorized for a "smidgen" of any Schedule I or II drug). Judge Marovich sentenced Wilson to a 235-month term of imprisonment. Because this sentence is well within the 40-year statutory maximum, Wilson's 235-month sentence did not violate *Apprendi*.

### III.    Gholson, Crenshaw, and Tetteh's *Blakely* Claims

In supplemental petitions filed on June 21, and July 26, 2004 Petitioners Gholson and Crenshaw[4] raise a similar claim challenging the court's imposition of a life sentence under 21 U.S.C. § 848(b), relying on the Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004). Not to be outdone, Petitioner Tetteh filed his own supplemental petition on July 27, 2004 raising a *Blakely* challenge to the sentencing enhancements imposed under §§ 2D1.2(a)(3) and 2D1.1(b)(1) of the sentencing guidelines for his use of a minor and

---

[4]     Petitioner Crenshaw titles his supplemental motion "Motion to Amend, Motion to Vacate, Set Aside or Correct Sentence Filed Pursuant to 28 U.S.C. § 2255 Motion."

possession of a firearm during the offense. U.S.S.G., §§ 2D1.1(b)(1) (use of a firearm); 2D1.2(a)(3) (use of a minor). In *Blakely*, the Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Id.* at 2537 (emphasis in original) (citations omitted). Thus, the Sixth Amendment is violated when a judge imposes a punishment that the jury's verdict alone does not allow or for which "the jury has not found all the facts 'which the law makes essential to the punishment' . . . ." *Id.* (quoting 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872)).

Gholson and Crenshaw allege that the judge violated the Sixth Amendment, as interpreted in *Blakely*, when he imposed a sentence of life imprisonment under § 848(b). That provision authorizes the imposition of a life sentence as the result of a conviction for engaging in a continuing criminal enterprise (CCE) if the defendant is a principal administrator, organizer, or leader of the enterprise and (1) the violation involved "at least 300 times the quantity" of a drug described in § 841(b)(1)(B) or (2) the enterprise received $10 million in gross receipts during any twelve-month period. 21 U.S.C. § 848(b). Petitioners rightly note that the jury returned only a general guilty verdict; Judge Marovich himself determined that these drug quantities were involved, employing a preponderance standard, based on the Presentencing Report presented by the Government.

Similarly, Tetteh alleges that the jury verdict corresponded to an initial base offense level of 36 under the sentencing guidelines, but that the judge then imposed a 3-level sentencing enhancement for the use of a minor and possession of a firearm during the offense, facts upon which the jury had not ruled. According to Tetteh, as a result of these enhancements, his sentencing range increased from 210-262 months to 292-365 months, and he was ultimately sentenced to a 292-month term.

Petitioners appear to present valid *Blakely* concerns; however, the Supreme Court decided *Blakely* on June 24, 2004, more than five years after Crenshaw was convicted and sentenced. The

Supreme Court has made clear that "new constitutional rules of criminal procedure do not apply to cases that are final before the new rules are announced." *Lambert v. McBride*, 365 F.3d 557, 562 (7th Cir. 2004) (citing *Teague v. Lane*, 489 U.S. 288 (1989)). Furthermore, the Seventh Circuit has held that *Apprendi* is not retroactive, *Curtis v. United States*, 294 F.3d 841 (7th Cir.), *cert. denied*, 537 U.S. 976 (2002), and thus it would follow that *Blakely*, an extension of *Apprendi*, does not apply retroactively. More recent decisions confirm this: In *United States v. Booker*, 542 U.S. __, 125 S.Ct. 738 (2005), the Court reiterated that defendants have a right to jury trial on any disputed factual subject that increases the maximum punishment, and that the federal Sentencing Guidelines fall within this rule to the extent they are mandatory. In *McReynolds v. United States*, No. 04-2520, 04-2632, 04-2844, __ F.3d __, 2005 WL 237642, at *2 (7th Cir. Feb. 2, 2005), the Seventh Circuit concluded that the *Booker* holding has no retroactive application.

Until and if the Supreme Court holds otherwise, Petitioners' claim under *Blakely* must fail.

## IV. Crenshaw's Continuing Criminal Enterprise Claims

Crenshaw raises a number of other issues related to his conviction under § 848 for engaging in a continuing criminal enterprise. 21 U.S.C. § 848. As an initial matter, Crenshaw argues that the conviction was improper in light of *United States v. Richardson*, 526 U.S. 813 (1999), in which the Supreme Court held "that a CCE conviction can be sustained only if the jury unanimously agreed on each of the specific predicate acts required to show the existence of the CCE." *Wilson*, 237 F.3d at 833. The Seventh Circuit rejected this claim when Crenshaw and Gholson raised it on direct appeal. As this court has previously explained, the Seventh Circuit held that the trial court's failure to instruct the jury that they must unanimously agree on the predicate offenses underlying a CCE conviction was harmless, since the jury unanimously agreed that Crenshaw (and his co-defendants Gholson and Hatcher) had committed two of the related predicate offenses. *Gholson*, 2003 WL 21466954, at *12 (citing *Wilson*, 237 F.3d at 830). At this point, the Seventh Circuit's holding on this issue remains binding on this court as it conducts

habeas review.

Crenshaw also raises several issues related to his CCE conviction that he did not raise on his direct appeal. First, he claims that the court failed to instruct the jury that certain individuals who had been cooperating with the government could not be included in the CCE counts. Specifically, he claims that the jury should have been instructed that the drug transactions charged in Counts Seven, Eight, and Nine could not serve as CCE predicates because the buyer Charmagne Johnson was cooperating with the government at the time of the sale, and thus could not be a coconspirator, and that Johnson's purchase from Crenshaw was an isolated incident, not part of the continuing criminal enterprise. In addition, Crenshaw claims that, as to the CCE element that he acted in concert with five or more persons, 21 U.S.C. § 848(c)(2)(A), the jury should have been instructed that certain individuals could not be included because of their cooperation with the government. Third, Crenshaw argues that the jury was improperly led to believe that he acted as the organizer of five or more persons under § 848(c)(2)(A), despite testimony of a number of witnesses that they had no agreement and/or drug dealings with him. Finally, Crenshaw argues that the government failed to prove the requisite element that he was responsible for the active use of juveniles under the §§ 861(a)(1) and (2).

The government argues that these claims are procedurally defaulted. As discussed above, in order to raise an issue for the first time in a § 2255 petition, a petitioner must meet the "cause and prejudice test" by showing cause for his failure to raise the claim on direct appeal and demonstrating that he was prejudiced by the failure to raise the issue. *Barker v. United States*, 7 F.3d 629, 631 (7th Cir. 1993). The only available "cause" in this case is ineffective assistance of counsel for failure to raise these issues at trial and on direct appeal. Under the two-pronged *Strickland* test, outlined above, a defendant claiming ineffective assistance of counsel must demonstrate both: (1) deficient performance by counsel; and (2) prejudice stemming from the deficiency. *Strickland*, 466 U.S. at 687-88, 694.

Crenshaw cannot demonstrate that counsel's performance was deficient, let alone that he was prejudiced by any deficiency, as these claims have no merit. Crenshaw was not entitled to a jury instruction directing the jury not to consider evidence of his drug transactions with Johnson in the context of the CCE charge. As the government correctly notes, the charged conspiracy did not accuse Crenshaw of conspiring with his purchasers, such as Johnson, but rather of conspiring as a member of the Gangster Disciples to distribute narcotics. (Government's Response to Defendant Bryan Crenshaw's Motion under Title 28, United States Code, Section 2255, at 14.) The government did not allege that Johnson was a coconspirator, but rather that Crenshaw's drug sales to her constituted a part of a series of drug-related offenses committed by Crenshaw in the course of his conspiracy with the Gangster Disciples and encompassed by the CCE statute.

Crenshaw claims that he merely had a buyer/seller relationship with Johnson, and that the drug sales were isolated incidents unrelated to the Gangster Disciple conspiracy. These assertions are belied by evidence that Crenshaw's sales to Johnson occurred in the shop where he conducted his gang-related business and were consistent with the Gangster Disciples' practice of selling narcotics to non-gang members. (T.T. at 1560-64.) Johnson also testified that Crenshaw spoke of his involvement with the Gangster Disciples during these transactions. (*Id.* at 1588-97.) In any event, the trial court did specifically instruct the jury that (1) "A person cannot conspire with a government informer" and (2) "Evidence of a buyer-seller relationship, standing alone, is insufficient to support a narcotics conspiracy conviction." (*Id.* at 2755.)

Crenshaw challenges his attorney's failure to request an instruction that certain persons could not be considered part of the "five or more persons" necessary to support a CCE conviction, because the persons at issue were, at the time of their contact with Crenshaw, government informants or persons with whom he had a mere buyer-seller relationship. Even if the court were to find that Crenshaw's counsel was deficient in failing to propose such a jury instruction, Petitioner Crenshaw has not demonstrated any resulting prejudice. Judge Marovich advised the jury in his

instructions that "[a]s to each of the five or more people, the government must prove that the defendant you are then considering organized and supervised or managed them in accomplishing the activities that contribute to the continuing enterprise." (T.T. at 2758-59.) This instruction contrasts with those in the principal cases cited by Crenshaw. In *United States v. Barona*, 56 F.3d 1087, 1097-98 (9th Cir. 1995), for example, the court not only failed to instruct the jury that individuals qualified as supervisees only if they were those over whom the defendant exercised managerial responsibility, but also presented the jury with a list of persons who could qualify as "five or more" supervisees; included on that list were the names of several individuals who did not qualify as supervisees as a matter of law. Likewise in *United States v. Lindsey*, 123 F.3d 978 (7th Cir. 1997), the trial court failed to instruct the jury as to the managerial requirement under the CCE statute, even after the government had suggested in its closing that a CCE conviction could be premised on a buyer-seller relationship. Despite this error, the court, applying a plain error standard, upheld the CCE conviction in *Lindsey*. *Id.* at 985-86. Here, the trial court did not give an improper instruction, nor did the Government suggest that a mere buyer-seller relationship could serve a predicate for the CCE charge. Rather, Crenshaw merely asserts that he was prejudiced by the court's failure to give, and his attorney's failure to request, an additional instruction clarifying those persons who can and cannot qualify as supervisees under § 848(c)(2)(A).

Moreover, the jurors heard an overwhelming amount of evidence about the Gangster Disciple's drug trafficking operation and Petitioner Crenshaw's leadership position in the organization. Given the vast array of evidence linking Crenshaw to the Gangster Disciple's drug operations, the court is confident that Crenshaw suffered no actual prejudice and that, even had the proposed instruction been given, the jury would have had no trouble identifying five or more persons organized, managed, or supervised by Crenshaw within the context of the continuing criminal enterprise.

Finally, Crenshaw argues that he is entitled to habeas relief with regard to his conviction for

employing and using juveniles in connection with a drug trafficking conspiracy under 18 U.S.C. §§ 861(a)(1) and (2). Specifically, he argues that the government failed to prove that he was responsible for some active use of juveniles. As an initial matter, this issue might be moot as the Government has voluntarily dismissed Crenshaw's convictions under §§ 861(a)(1) and (2). (Doc. No. 511-3, Jan. 14, 1999.) Moreover, even if these offenses were used as predicates for his CCE conviction, his argument has no merit. A co-conspirator is responsible for the acts or crimes of other members of the conspiracy "if he was a member of the conspiracy when the act was committed, and if the act was committed in furtherance of or as a natural consequence of the conspiracy." *United States v. Smith*, 223 F.3d 554, 567 (7th Cir. 2000). Moreover, a CCE conviction does not require the predicate acts to have been committed by the defendant with five or more supervisees; rather, it is sufficient that the predicate acts be attributable to the defendant on a co-conspirator liability theory. *See, e.g.*, *United States v. Souffront*, 338 F.3d 809, 837 (7th Cir. 2003); *Haywood v. United States*, 216 F. Supp. 2d 725, 733 (N.D. Ill. 2002).

As discussed above, former members of the Gangster Disciples testified as to the widespread use of "shorties"– that is, juvenile members of the gangs who served as security for the gang to avoid the risk to adult members of the gang of being caught armed. (T.T. at 235-36.) The Seventh Circuit has held that use of a minor as a "look-out" is sufficient "use" for purposes of section 861(a)(2). *United States v. Stevenson*, 6 F.3d 1262, 1269 (7th Cir. 1993). In addition, Derrick Wiltz and Robert Ford both testified that they sold drugs for the Gangster Disciples while juvenile members of the gang. (T.T. at 1730, 1834.) This evidence is sufficient to uphold Crenshaw's conviction under §§ 861(a)(1) and (2).

## V. Gholson's Fourth Amendment Claims

In his original habeas petition, Gholson raised a claim for relief based on an alleged violation of his Fourth Amendment rights, stemming from his false arrest and malicious prosecution. Specifically, he claimed that he was arrested without probable cause by a police officer who had

21

a grudge against him. He also alleged that the evidence against him was concocted as part of a "formulated plan" by the Chicago Police Department, which involved planting drugs on him and presenting perjured testimony to the grand jury. (Gholson's § 2255 Petition, at 4.) Because the government failed to respond to this claim in Gholson's original petition, the court reserved judgment on the issue and requested that the government specifically address the issue in its supplemental response. *Gholson*, 2003 WL 21466954, at *11. In a supplemental petition filed on March 16, 2004, Gholson raises similar issues, alleging prosecutorial misconduct on the part of the United States Attorney for "allowing the known use of perjured testimony" by a Chicago police officer.

Although the government again failed to address this matter in its supplemental response, the court concludes the claim is barred by Gholson's failure to raise the matter on direct appeal. The court has already laid out the cause and prejudice hurdle facing Gholson. *Melvin*, 78 F.3d at 329 (To overcome procedural default, petitioner must show good cause for and prejudice from his failure to appeal). Petitioner cannot make such a showing. Although the court will liberally construe a prisoner's *pro se* petition under *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the burden still rests with Petitioner to show that he is entitled to habeas relief. Petitioner here offers no evidence in support of his claims that a "formulated plan" to unlawfully imprison him existed. Although his arrest followed a drug transaction in which Gholson purchased narcotics from a government informant, Gholson presents nothing more than his mere assertion that the "officer's know this never happen, but still they continue their malicious prosecution." (Gholson's § 2255 Petition, at 2.) In the absence of hard evidence, Gholson merely declares: "I will not linger on this point, I'm sure that this Honorable Court will see that the defendant had a false criminal case filed against him, and that there was no probable cause for this arrest." (Gholson's § 2255 motion, at 3.) Given Petitioner's failure to cite any evidence suggesting that his arrest and ultimate conviction in this case were the result of some nefarious government plot, the court cannot find that his

appellate attorney was ineffective for failing to raise this issue at trial or on appeal, nor that he was prejudiced by his failure to raise the issue. Notably, the defense did raise the issue of police perjury and an alleged vendetta against Gholson: On cross examination of the alleged rogue police officer, Gholson's trial counsel asked several times whether the officer had "promised . . . to get him [Gholson] off the street." (T.T. at 619-20.) The jury was clearly not persuaded by the defense's unsupported allegations of a police plot to falsely imprison Gholson. Given the weakness of this claim, appellate counsel's decision not to press this issue on direct appeal is understandable. "Good advocates do not raise every non-frivolous legal issue," *United States v. Knox*, 287 F.3d 667 (7th Cir. 2002), let alone frivolous ones. Certainly, Petitioner Gholson has not produced nearly enough evidence to show that there is a "reasonable probability" that had his trial or appellate counsel raised the issue, the result of his trial or appeal would have been different. *Strickland*, 466 U.S. at 694.

Given Gholson's failure to present evidence supporting his claim that he was set up by the Chicago Police Department, and his failure to show cause for or prejudice from his failure to raise the issue in his direct appeal, the court denies Gholson's claim for habeas relief on the grounds of prosecutorial misconduct and Fourth Amendment violations.

## VI. Gholson's Jury "Intrusion" Claim

On December 8, 2003, Petitioner Gholson filed "supplemental pleadings" to his original § 2255 petition.[5] In this supplemental document, Gholson raised a new basis for habeas relief: outside intrusion into the jury deliberations. Specifically, Gholson alleges that he previously had a "personal affair/relationship" with an alternate juror, prior to the trial. (Gholson's Dec. 9, 2003

---

[5]     As far as the court can tell, Gholson has filed no less than eight "supplemental" petitions. Since filing his original petition on September 30, 2002, he has filed supplements on October 22, 2002 (Doc. No. 3), April 14, 2003 (Doc. No. 5), November 10, 2003 (Doc. No. 31), December 8, 2003 (Doc. No. 34), February 20, 2004 (Doc. No. 37), March 16, 2004 (Doc. No. 38), July 21, 2004 (Doc. No. 39), and January 21, 2005 (Doc. No. 40). Many of these petitions have been duplicative and clearly meritless.

Supplemental Pleadings, at 1-2.) Although this juror was excused, he alleges that she "continued having relations with two of the jurors on Gholson's case, that was an 'intrusion' into the province of the jury. An 'outside' intrusion that had a 'prejudicial impact.'" (*Id.* at 2.) He further alleges that "the alternate juror had literally stolen Petitioner's income real estate property, during the time of trial proceedings." (*Id.*)

Although Gholson has styled these successive petitions as "supplemental," his inexplicable failure to include all issues in his original petition frustrates the judicial system's interest in finality and burdens its scarce resources to the same extent as a new petition would. Allowing endless supplemental petitions enables litigants "to withhold claims for manipulative purposes and may establish disincentives to present claims when evidence is fresh." *McCleskey v. Zant*, 499 U.S. 467, 491-92 (1991). These numerous additional submissions surely qualify as abusive. Nevertheless, the government has not argued that this and other subsequent amendments to Gholson's petition constitute abuse of the writ and the court will not dismiss a petition on that basis *sua sponte. Id.* at 477 ("government has the burden of pleading abuse of the writ.").

Although the court will not dismiss this supplemental petition as abuse of the writ, Gholson still faces procedural default for failing to raise this "intrusion" claim on direct appeal. Setting aside the issue of cause, for which Gholson again cites ineffective assistance of counsel, the court cannot discern any prejudice to Gholson stemming from this claim that is arguably fantastic and delusional on its face. Gholson fails to explain how a juror who did not participate in the deliberations could have affected the outcome of the trial. In the lone cited case, *Remmer v. United States*, 347 U.S. 227 (1954), a juror was approached by an unidentified man and told that he could profit by returning a verdict favorable to the defendant. The Court held that the defendant was entitled to a hearing examining whether these comments and subsequent investigation and questioning of the jurors by FBI agents were harmful to the defendant, entitling him to a new trial. *Id.* at 451-52. Clearly, Gholson has not shown any similar events likely to prejudice a jury against

him. The mere removal of a juror prior to deliberations does nothing to prejudice the defendant or taint the jury. Moreover, the claim that the dismissed juror "continued having relations with two of the jurors" on the case is unsupported. (Gholson's Dec. 8, 2003 Petition, at 2); *see United States v. Ward*, No. 02 C 1405, 2002 WL 31834897, *4 (N.D. Ill. Dec. 16, 2002) (Kocoras, J.) (refusing to entertain a § 2255 petitioner's "outrageous claim" that the court improperly dismissed a juror inclined to acquit him because she had been sleeping, where the affidavit he offered in support of his claim "lacks the requisite specificity and contains nothing more than a recitation of simple conclusions, rumors, and speculative opinions."). Finally, Gholson makes the implausible allegation that the dismissed juror stole his property during the trial. He has not explained, however, how this theft, assuming it occurred, is relevant to his criminal conviction.

Having identified no cause or prejudice for failing to raise the intrusion claim on direct appeal, Petitioner Gholson cannot now raise the claim in a § 2255 petition.

## VII. Ineffective Assistance of Counsel Claims

In addition to the numerous ineffective assistance of counsel claims discussed and decided above, Petitioners Gholson and Wilson raise several more specific ineffective assistance of claims. Applying the *Strickland* standard, the court considers these claims briefly.

### A. Gholson's Additional Ineffective Assistance of Counsel Claims[6]

In alleging ineffective assistance of trial counsel, Petitioner Gholson cites a laundry list of deficiencies in his trial counsel's performance: (1) failing to interview and subpoena individuals who could have provided favorable evidence on Gholson's behalf; (2) failing to interview government witnesses; (3) failing to discuss the presentence report with Gholson or object to the report; (4) failing to familiarize himself with the facts and law relevant to Gholson's case; (5) failing to inform Gholson that his prior criminal convictions would be used to enhance his sentence; (6) discouraging

---

[6]    In its earlier opinion, the court reserved judgment on Gholson's ineffective assistance of counsel claims pending a supplemental response by the government. *Gholson*, 2003 WL 21466954, at **13-14.

Gholson from entering a plea agreement that would have allowed Gholson to plead guilty in exchange for a 20-year sentence; (7) telling Gholson that the maximum sentence he could get was 20 years; (8) failing to argue that Gholson was not the person on audio and videotapes presented by the government; (9) calling Gholson a "thug" in front of the jury; (10) preventing Gholson from testifying at trial because he was not prepared to conduct a direct examination; (11) failing to object during the direct examination of a police officer who, Gholson claims, planted evidence on him. In addition, he claims that his appellate counsel was ineffective because his attorney failed to speak with him while preparing the direct appeal.

In its supplemental response, the government argues that Petitioner has failed to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Matheny v. Anderson*, 253 F.3d 1025, 1039-40 (7th Cir. 2001), *cert. denied*, 504 U.S. 962 (2002). "Conclusory allegations" of poor performance do not satisfy this prejudice component of the *Strickland* test. *United States v. Farr*, 297 F.3d 651, 657 (7th Cir. 2002). Yet conclusory allegations are all that Petitioner offers. At no point does Gholson explain how any of the many claimed deficiencies in his counsels' performance would have resulted in a different outcome. In the absence of such evidence, trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

As for Gholson's claims of the rejection of a possible plea bargain, the government correctly notes that such an ineffective assistance claim must be established "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." *Peters v. United States*, 159 F.3d 1043, 1046 (7th Cir. 1998) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)). Without objective evidence, Petitioner's mere statement that he would have accepted the plea absent counsel's advice "is self-serving and alone, insufficient to establish . . . a reasonable probability that he would

26

have accepted the plea." *Toro*, 940 F.2d at 1068.

As the court concludes these claims had no merit, it likewise concludes Petitioner did not suffer any prejudice from the failure to raise these claims on direct appeal.

## B. Wilson's Additional Ineffective Assistance of Counsel Claims

Petitioner Wilson raises claims of ineffective assistance of counsel with regard to the calculation of his sentence under the sentencing guidelines. Specifically, he argues that his counsel was ineffective for failing to argue that he should have been sentenced under criminal history category II, rather than category VI, because Wilson was a late comer to the conspiracy, not entering until late 1995. Despite his late entry, Wilson argues that the court incorrectly assigned criminal history points to certain prior convictions that occurred before the applicable ten and fifteen-year time limits under § 4A1.2(e) of the sentencing guidelines. U.S.S.G. § 4A1.2(e).

There is some confusion in the record concerning the final calculation of Wilson's criminal history. Count one of the superseding indictment, to which Wilson pleaded guilty, charged Wilson with conspiring to distribute, crack, powder cocaine, heroin and marijuana from "approximately the mid-1980s until on or about May 22, 1997." (Record at 23.) Although in his plea agreement Wilson purports to plead guilty to this Count One, the factual basis set forth in the plea agreement indicates that Wilson's involvement in the conspiracy spanned the period from "the early 1990s and May of 1997." (Plea Agreement, at 2.) The plea agreement also contains a reference to Wilson's involvement in a conspiracy to distribute heroin "between approximately the winter of 1995-1996 and early 1997." (*Id.* at 2-3.)

In any event, the court need not wade through the confusion. Even if the court assumes that Wilson is correct in his assertion that he did not join the conspiracy until late 1995, Petitioner has not suffered any prejudice. The career offender guideline applies if: (1) the defendant is at least eighteen at the time of the instant offense; (2) the instant offense is a felony and either a crime of violence of controlled substance offense; and (3) defendant had at least two prior felony

convictions that are either a crime of violence or a controlled substance violation. U.S.S.G. § 4B1.1. There is no dispute that Wilson was eighteen years old as of 1995 and that the instant offense is a controlled substance offense. The only argument Wilson can make is that he did not have at least two prior felony drug convictions; but if, as he now argues, he did not join the narcotics conspiracy until 1995, then the court may fairly count his June 1992 and October 1993 felony drug convictions as part of his criminal history, qualifying him as a career offender under § 4B1.1. If, contrary to his argument, he joined the conspiracy earlier than 1995, then those 1992 and 1993 convictions might be viewed as part of the instant offense, meaning that they do not count as part of his criminal history. That conclusion would, however, permit the court to look back further in time, to count other convictions that would not be part of the calculus if he joined the conspiracy later.[7] Either way, the court properly determined that Wilson's record supports a conclusion that he is a career offender.

Wilson also raises an ineffective assistance of counsel claim regarding the imposition of a two-level sentencing enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon or firearm. U.S.S.G. § 2D1.1(b)(1). Wilson argues that the enhancement was inappropriate because the record does not indicate that either (1) Wilson personally possessed a firearm in relation to the conspiracy, or (2) it was reasonably foreseeable to Wilson that one of his coconspirators would possess a firearm in relation to the conspiracy. Wilson's claim here must fail because his trial counsel did argue, albeit unsuccessfully, against the enhancement and the record contains evidence sufficient to uphold the enhancement.

The § 2D1.1 sentencing enhancement for possession of a dangerous weapon applies to all drug trafficking offenses. Under Seventh Circuit law, "a defendant convicted of conspiracy need

---

[7]     These convictions occurred on July 27, 1979, September 21, 1981, June 2, 1982, June 27, 1982, August 23, 1983, February 1, 1984, April 3, 1984, June 27, 1984, September 19, 1984, and August 20, 1985. (Government's Response In Opposition to Petition for Writ of Habeas Corpus, at 31-32.)

28

not have possessed a firearm himself for the enhancement to apply, so long as his co-conspirators' possession of firearms in furtherance of the conspiracy was reasonably foreseeable to him." *United States v. Mansoori*, 304 F.3d 635, 670-71 (7th Cir. 2002), *cert. denied*, 538 U.S. 967 (citing *United States v. Cavender*, 228 F.3d 792, 801 (7th Cir. 2000), *cert. denied*, 532 U.S. 1023 (2001).) The government presented an overwhelming amount of evidence detailing the use of firearms by the Gangster Disciples, as well as statements by Wilson reflecting his own willingness to use guns and violence to enforce Gangster Disciple control of the drug trade. In a memorandum objecting to the Presentencing Report, Wilson's trial counsel argued that these statements were "mere puffing;" but the court ultimately rejected this argument: "I think guns were widely used in furtherance of this conspiracy, and I believe Mr. Wilson had every reason to know that that was the case . . . ." (Sentencing Transcript, at 7-8.)

Petitioner cannot establish ineffective assistance of trial counsel on these grounds. Despite the fact that his attorney argued against the imposition of the firearm enhancement, there is an overwhelming amount of evidence in the record that the Gangster Disciples used firearms and violent tactics to maintain control of the narcotics trade, and that Petitioner Wilson was aware of the gang's violent tactics.

### C. Crenshaw's Sixth Amendment Claim

Crenshaw brings a similar claim that his Sixth Amendment rights were violated by the trial judge's denial of his motion for appointment of new counsel. As the Government notes, Crenshaw's motion was just one of many brought by the various Defendants in the Gangster Disciple case for appointment of new counsel. (Government's Response to Crenshaw's Motion, at 25.) In each of these motions, the Defendants raised a litany of complaints about their counsel's conduct, including that their counsel were not adequately representing them, did not file all requested motions, and did not visit their clients at the Metropolitan Correctional Center to discuss the case. (Status Hearing Transcript, Jan. 13, 1998, at 7-26.) In response, Judge Kocoras, who

was presiding over the case prior to trial, expressed confidence in the reputations of the appointed attorneys, and explained that disagreements between lawyers and their clients commonly arise.[8] (*Id.* at 11.) The court stressed, however, that the Defendants need to trust their attorneys' judgment in matters such as the filing of motions. (*Id.* at 11, 15.) As to the amount of time spent with their clients, the judge noted the logistical difficulties and time limits presented by the Defendants' incarceration, but requested counsel to communicate with their clients on a "more frequent basis." (*Id.* at 11, 13.) Nevertheless, the judge concluded that it was too late to appoint new counsel,[9] and that he was "satisfied on a personal level that all of these lawyers are competent and able; and, at the time the trial commences, they are going to be equipped to defend these charges." (*Id.* at 26.)

Crenshaw presents no evidence showing that there had been a "total lack of communication [between him and his attorney] preventing an adequate defense," *United States v. Bjorkman*, 270 F.3d 482, 500 (7th Cir. 2001) (citations omitted), nor that he was deprived his Sixth Amendment right to effective counsel. Given the absence of such a showing, Crenshaw cannot assert that the trail court's denial of his motion for appointment of new counsel violated his Sixth Amendment rights.

## VIII. Gholson's Supplemental Pleadings

Finally, the court turns to Petitioner Gholson's most recent supplemental pleadings. In supplemental pleading filed on February 20, 2004, Gholson argues (a) that he has new evidence that will show that Officer Peck, who testified for the prosecution, perjured himself; (b) that Gholson's trial counsel was ineffective for failing to investigate and uncover Officer Peck's perjury;

---

[8] Crenshaw brought his motion for new counsel on January 13, 1998. On May 13, 1998, the Seventh Circuit ordered Judge Kocoras to recuse himself from the case, due to his son's involvement in an earlier Gangster Disciple prosecution while serving as an intern at the United States Attorney's Office. *See Matter of Hatcher*, 150 F.3d 631 (7th Cir. 1998).

[9] At the time of this hearing, on January 13, 1998, the trial was scheduled to begin on February 9, 1998. (Status Hearing Transcript, Jan. 13, 1998, at 26.)

(c) that Gholson's conviction constituted double jeopardy; and (d) that there was no basis in the evidence for the sentencing judge's determination that 1.5 kilograms of crack cocaine were involved in the conspiracy. These claims require only brief consideration.

### A. Alleged Perjury

First, the matter of Officer's Peck's alleged perjury: Gholson contends that Peck gave false testimony against him "out of a general dislike for the petitioner and in retaliation for the petitioner having filed a complaint with the OFFICES OF PROFESSIONAL STANDARDS against OFFICER PECK." Motion to Supplement, Jan. 21, 2005, at 3. From a review of the exhibits he has attached to his January 2005 submission, the court understands that on December 19, 1992, Officer Peck approached Gholson's apartment, investigating a sexual assault charge that had been lodged against him. A woman answered the door, holding a revolver. Officer Peck pursued her into the apartment, where he recovered a tan handbag containing several weapons and a quantity of cannabis. As arresting officers left the apartment with the woman in custody, they observed Gholson in a car, stopped him, and arrested him as well. (Arrest Report, Motion to Supplement, Exhibit B-1; see also Trial Transcript, at 608-611.)

A notation that appears on the arrest report indicates that the alleged sexual assault victim recanted the charges, and a court record reflects that on January 19, 1993, drug and weapons charges against Gholson were dismissed. (Motion to Supplement, Exhibits B-1, B-2.) In Exhibit 5 to his Motion to Supplement, Gholson has submitted excerpts of Officer Peck's trial testimony in which, Gholson contends, Peck falsely denied that a state court weapons charge against Gholson had been dismissed. To examine that claim, the court obtained the full trial transcript and reviewed Officer Peck's testimony as a whole. The relevant testimony reads:

BY MR. FALCONER (Gholson's trial counsel):

Q.    Well, the gun case was thrown out as no probable cause; wasn't it?

A.    No.

Q. Was he convicted?

A. As to your defendant, yes.

Q. Yes.

A. But the case was not thrown out.

(Trial Transcript at 620.) A "cold" record is often susceptible of more than one interpretation; but as the court reads this exchange, including particularly Mr. Falconer's own word "yes"–suggesting a response to Officer Peck's request for clarification–the testimony was truthful. Specifically, it appears to the court that Peck's answer, "As to your defendant, yes," was given not in response to the preceding question, but to the question whether "the gun case was thrown out." Under that interpretation of his testimony, Officer Peck acknowledged that the charges were "thrown out" due to a finding of no probable cause as to Gholson, though Peck testified that the case as a whole (presumably, involving another defendant) was not dismissed. Other portions of Peck's testimony are inconsistent with the theory that he was motivated to manufacture charges against Gholson. It was Officer Peck who concluded the voice heard on a critical taped conversation was not that of Gholson, and accordingly, that four counts of the federal indictment against Mr. Gholson should be dismissed. (Id. at 624.) Peck's testimony establishes, further, that his reason for wanting Gholson "off the streets" was Peck's suspicion that other Gangster Disciple members had planned to murder Gholson. (Id. at 627.)

Even if the jury understood the quoted testimony as a false denial that the gun charge was dismissed, Gholson offers no basis for the court to conclude it had any significance in the jury's verdict on drug conspiracy charges. The transcript portions cited by Gholson demonstrate that his attorney did cross-examine Peck concerning his animus toward Gholson. Moreover, if counsel understood Peck's testimony as Gholson now argues he should have, the court presumes that records reflecting the dismissal of those charges were available and could have been used to cross-examine Peck. Most significantly, Gholson offers no support for his assertion that he has

"new evidence" concerning Peck's lies. To the contrary, as early as the time of trial, Gholson believed Peck was "out to get him." Having failed to raise this matter on direct appeal, the court deems it procedurally defaulted.

## B. Ineffective Assistance

The second claim in Gholson's February 2004 submission relates to Peck's alleged perjury, as well, and fares no better. Specifically, Gholson argues his trial counsel was ineffective for failure to uncover Peck's bias. The trial transcript demonstrates, to the contrary, that trial counsel did pursue this alleged bias in his cross-examination of Peck:

BY MR. FALCONER (Gholson's trial counsel):

Q. You told me you had a lot of street encounters with Jimmie Gholson. You promised Jimmie Gholson that you were going to get him; didn't you?

A. No.

Q. You promised him you were going to get him off the street; didn't you?

A. No.

Q. He has filed an Office of Professional Responsibility charge against you; hasn't he?

[Objection to this question overruled.]

A. Yes, he did.

Q. And in line with your promise to get him, you brought him into court on this gun charge; didn't you?

A. No. That charge was filed after the case, the gun case.

(Trial Transcript at 619-20.)

Gholson now suggests that trial counsel was ineffective for failing to pursue this matter further, but as the prosecutor suggested, that effort might well have opened the door for Officer Peck to testify concerning "all of the many arrests he knows about Mr. Gholson." (*Id.* at 625.) There is no basis for a conclusion that trial counsel was ineffective in this regard.

## C. Double Jeopardy

Gholson's third argument is that he was subjected to double jeopardy in being convicted under 21 U.S.C. § 846 (conspiracy to distribute drugs), 21 U.S.C. § 861(a)(1) and (2) (use of a minor in a drug distribution operation) and 21 U.S.C. § 848 (continuing criminal enterprise). In its earlier opinion, this court noted that the jury returned guilty verdicts on these charges, but neglected to observe that all charges other than the CCE charge were dismissed, on the government's motion, at the time of sentencing. (*See* Judgment and Commitment Order, Jan. 14, 1999, at 1.) Judge Marovich sentenced Mr. Gholson on Count II, the CCE charge, only. There is no double jeopardy violation here.

## D. Weight of Crack Cocaine

Gholson's final argument is wholly undeveloped. He suggests that his sentence is "invalid and unconstitutional" because the court had no basis in the record for its determination that the offense conduct involved 1.5 kilograms of crack cocaine. To the contrary, at sentencing Judge Marovich described a variety of calculations he used to determine that the amount of drugs involved in the charged conspiracy were well in excess of that amount. Judge Marovich recognized that plans voiced by Gangster Disciples leader Larry Hoover were likely hyperbolic, but even a fraction of Hoover's estimates more than satisfied the sentencing requirement. On direct appeal, the Seventh Circuit approved Judge Marovich's methodology: "[T]he district court's method for determining the drug quantity involved in the conspiracy was in line with our decision in [*United States v.*] *Smith*,[223 F.3d 554, 568-69 (7th Cir. 2000)] and not clearly erroneous." *United States v. Wilson*, 237 F.3d 827, 831 (7th Cir. 2001). Gholson offers nothing that suggests this court should revisit the matter.

## IX. Miscellaneous Motions

### A. Gholson's Motion for Order to Reimburse Assessment Fee

In a motion filed on November 12, 2003, Gholson correctly observes that this court reduced the amount of the special assessment imposed on him from $400 to $100. Gholson is not correct, however, that this court's ruling requires the United States Attorney to return funds to him. Judge Marovich imposed a $15,000.00 fine at the time of sentencing, in addition to the special assessment. Unless Gholson has paid his fine in full, in addition to the $400 special assessment, he is not entitled to a refund. This motion is denied.

### B. Gholson's Motion Pursuant to Rule 60(b)

Gholson argues that the court did not address his earlier argument, that his CCE conviction was unsupported by evidence of a predicate offense. The jury convicted Gholson of a predicate offense, however, 21 U.S.C. § 861, and the evidence was presumably sufficient to support that conviction. In any event, it appears that Gholson did not raise this matter on direct appeal, and the court concludes it is procedurally defaulted. Gholson's remaining arguments in support of this motion appear to relate to ineffective assistance of counsel and are discussed elsewhere in this opinion. His Rule 60(b) motion is denied.

### C. Gholson's Motion for Judgment on the Pleadings

All of the arguments Gholson makes in support of this motion relate to ineffective assistance and are discussed elsewhere in this opinion. The motion is denied.

### D. Tetteh's Motion for Partial Summary Judgment

In this motion, Petitioner Tetteh demands an explanation for the United States Attorney's office's assertion that "file-stamped copies" of certain documents were never returned to government's counsel. Tetteh asserts that his jailhouse lawyer, John Gregory Lambros, does not understand how this could be so. Mr. Lambros's confusion about the court's file-stamping practices

(and any inadvertent failures to provide appropriate copies) are not a basis for relief. This motion is denied.

Mr. Tetteh also asks that Petitioner Jones be assigned a civil filing number. The court notes that Mr. Jones did file his own § 2255 petition, under Docket Number 02 C 4784. The court will ensure that Mr. Jones receives notices of this court's action in his petition.

### E.    Jones's Objections/Response to the Government's Submissions

Petitioner Jones, like Mr. Tetteh, asks that the court devote attention to the case numbers assigned to these petitions. The court will double-check the filing numbers to be sure that Mr. Jones and other Petitioners have received appropriate notices. Further, as Jones requests, the court will deem him to have adopted other Petitioners' arguments by reference.

Finally, Jones argues that the United States Attorneys' Office has "concealed facts" by failing to cite to Judge Kennelly's opinion in *United States v. Knox*, No. 02 C 7392, 2003 WL 22012680 (N.D. Ill. Aug. 26, 2003). In *Knox*, as here, the jury had returned a general verdict on drug distribution conspiracy charges, without specifying the type and quantity of drugs involved. The § 2255 petitioner argued, as here, that the sentencing court acted improperly in imposing a sentence greater than the two-year maximum that could have been imposed for a conspiracy to distribute the least serious drug involved (in that case, codeine syrup; in our case, marijuana). 2003 WL 22012680, *3.[10]

In the case before this court, as discussed earlier, Mr. Jones was not sentenced in excess of the maximum for which he would have been eligible, had all of the narcotics at issue been marijuana. The government's failure to cite Judge Kennelly's opinion made no difference, and Petitioner Jones's objections to the government's submissions are overruled.

---

[10]    On reconsideration, Judge Kennelly concluded the sentencing error was subject to harmless-error review, and that the petitioner had not established cause and prejudice sufficient to explain his failure to raise the matter on direct appeal. *See United States v. Knox*, No. 02 C 7392, 2004 WL 442629 (N.D. Ill. Mar. 9, 2004).

## CONCLUSION

For the foregoing reasons, in Case No. 02 C 6988, the court denies Gholson's motion for relief (Doc. No. 17-1), motion for partial summary judgment (29-1), motion in traverse (30-1), motion for judgment on the pleadings (30-2), motion pursuant to Rule 60(b) (32-1), and motion for order to reimburse assessment fee (33-1). In Case No. 02 C 7076, the court also denies Crenshaw's motion to vacate his sentence (26-2), motion to set aside the judgment (26-3), and motion to correct his sentence (26-4). In Case No. 02 C 7077, the court denies Jones and Tetteh's motions for partial summary judgment (0-1 and 5-1). In Case No. 02 C 6988, the court grants Gholson's motion to supplement his sentencing reduction motion (21-1), motions for leave to file supplemental pleading (31-1, 34-1, 37-1, 38-1, 39-1, and 40-1), and motion to supplement his § 2255 petition (39-1). In Case No. 02 C 7076, the court also grants Crenshaw's motion to amend (26-1). In Case No. 02 C 7077, Tetteh's motions for leave to amend (9-1, 10-1, 10-2) are also granted.

On March 31, 2004, the court granted in part, denied in part, and in part dismissed Petitioner Crenshaw's motion for return of property. Crenshaw's motion for discovery in Case No. 96 CR 553 (688-1), motion to compel (701-1) and motion for miscellaneous relief (701-2) all related to the matter of his property; each of these motions is stricken without prejudice as moot.

The petitions for relief under 28 U.S.C. § 2255 filed by Petitioners Gholson, Jones, Tetteh, Crenshaw, and Wilson are denied in their entirety.

ENTER:

Dated: February 14, 2005

REBECCA R. PALLMEYER
United States District Judge